# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## *WESTERN DIVISION*

| | |
|---|---|
| WELLS FARGO BANK, N.A., in its capacity as Successor Trustee, | |
| Plaintiff, | Case No._____ |
| v. | |
| DERRICK THOMAS ACADEMY CHARTER SCHOOL, INC. | |
| and | **COMPLAINT** |
| JANICE CADE, in her official capacity as a member of the Derrick Thomas Academy Board of Trustees | **JURY TRIAL DEMANDED** |
| and | |
| BETTY BROWN in her official capacity as a member of the Derrick Thomas Academy Board of Trustees | |
| and | |
| STEPHAN WALLACE in his official capacity as a member of the Derrick Thomas Academy Board of Trustees | |
| and | |
| PETE MUENKS in his official capacity as a member of the Derrick Thomas Academy Board of Trustees | |
| and | |
| MARVIN DONALDSON in his official capacity as a member of the Derrick Thomas Academy Board of Trustees | |

| | |
|---|---|
| and<br><br>JACQUELINE SPENCER in her official capacity as a member of the Derrick Thomas Academy Board of Trustees<br><br>and<br><br>MICHAEL MCINERNEY in his official capacity as a member of the Derrick Thomas Academy Board of Trustees,<br><br>      Defendants. | |

Plaintiff Wells Fargo Bank, N.A., acting in its capacity as successor Trustee, by its attorneys Husch Blackwell, L.L.P. and Davis and Ceriani, P.C., and, for its Complaint against Defendants, and each of them, states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Wells Fargo Bank, N.A. ("Plaintiff" or "Trustee") is a national banking association organized under the laws of the United States of America which, at all times pertinent to this Complaint, maintained its principal place of business in South Dakota.

2.      Derrick Thomas Academy Charter School, Inc. ("DTA") is a nonprofit corporation organized under the laws of the State of Missouri that, at all times pertinent to this Complaint, maintained its principal place of business in Missouri.

3.      Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, Marvin Donaldson, Jacqueline Spencer, and Michael McInerney were compensated members of the Derrick Thomas Academy Board of Trustees and are residents of the state of Missouri (collectively the "Defendant Board Members"). They are named as Defendants solely in their official capacities as members of the DTA Board of Trustees.

4. The negligent conduct of the Defendants alleged in this Complaint occurred in Missouri.

5. Venue of this action lies in this Court pursuant to 28 U.S. Code § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District and all the Defendants are residents of the State of Missouri.

6. Jurisdiction exists by virtue of diversity of citizenship pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

## GENERAL ALLEGATIONS

7. Former Kansas City Chiefs linebacker, Derrick Thomas, established the Third and Long Foundation based in Kansas City in 1990 to "sack illiteracy" in the lives of 9 to 13 year old urban children.

8. After the death of Derrick Thomas, EdisonLearning, Inc. ("Edison"), a for-profit business engaged in the operation and management of charter schools, partnered with the Third and Long Foundation to open Defendant DTA. DTA opened in 2002.

9. DTA was governed by the Missouri Charter Schools Act (the "Act") which requires, among other things, that DTA have a charter sponsor and that it: (1) report to the charter sponsor and the Missouri Department of Elementary and Secondary Education ("DESE") its budget and educational plans; (2) be financially accountable; (3) use practices consistent with the Missouri financial accounting manual; (4) provide for an annual audit; (5) publish audited financial reports; and (6) amend its charter only upon approval of the charter sponsor.

10. DTA's charter sponsor was the University of Missouri—Kansas City ("UMKC"). As the charter sponsor, UMKC had the ability to revoke or refuse to renew the DTA Charter if DTA

failed to comply with the Act or otherwise failed to comply with provisions of its Charter or requirements imposed by the Missouri Department of Education and Secondary Education ("DESE"). The Charter required DTA to have a management company and Edison was the management company when the school opened in 2002.

11. Edison managed the operations of DTA pursuant to a contract that required DTA to pay Edison 20% of DTA's revenues. Charter school management companies like Edison typically charge rates ranging from 5% to 20% of revenues. DTA could not afford to pay Edison 20% of revenues.

12. By 2007 DTA had incurred approximately $8.2 million in debt to pay for the acquisition and renovation of the school building, construction of certain improvements to the building, the purchase of equipment for the school and a $2.5 million loan it owed Edison.

13. To assist DTA by refinancing this debt, the Industrial Development Authority of Kansas City (the "Authority") issued $10,615,000 in aggregate principal amount of Revenue Bonds (the "Bonds") in January 2007.

14. The proceeds of the Bonds were loaned by the Authority to DTA, pursuant to a Loan and Trust Agreement between the Issuer and the Borrower, dated January 1, 2007 (the "Loan Agreement"). The $2.5 million loan from Edison was paid off with proceeds from the Bonds.

15. The Bonds were secured by revenues to be received by DTA, all funds and investments held from time to time in the Funds established under a "Loan and Trust Agreement" ("Loan Agreement") and a mortgage on the DTA facility. DTA's main source of revenue was state aid funds paid to DTA by DESE on a per student basis.

16.     UMB Bank, N.A., Corporate Trust ("UMB Bank") was the initial Indenture Trustee for the Bonds and, acting in that capacity pursuant to the Loan Agreement between UMB Bank, the Authority and DTA, administered the distribution of Bond proceeds and the subsequent payment of principal and interest on the Bonds to holders of the Bonds. Plaintiff Wells Fargo Bank, N.A., Corporate Trust now serves as successor Indenture Trustee to UMB Bank pursuant to an Instrument of Successor Trustee Appointment and Acceptance, dated June 5, 2013.

17.     DTA and the DTA Board of Trustees owed a duty to the Trustee for the Bonds, acting on behalf of holders of the Bonds, to comply with the provisions of the Loan Agreement and make all reasonable efforts to repay the Bonds.

18.     As alleged in more detail below, after the Bonds were issued, DTA and the Defendant Board Members repeatedly and negligently incurred debt to Edison they knew DTA could not repay, failed to comply with charter school standards imposed under the Act, and failed to comply with demands for information from DESE and UMKC. This resulted in UMKC's refusal to renew of the DTA Charter in November 2012. The Charter non-renewal caused DTA to close its doors in May 2013.

19.     DESE will no longer make state aid payments to DTA as a result of the non-renewal of the Charter and resulting closure of the school. As a result of the Defendants' negligent and irrational business decisions, conscious indifference to their professional duties, and failure to comply with Missouri Charter School laws, the Bonds are in default and bondholders will not be fully repaid.

20.     Edison's management contract expired in 2007 after the Bonds were issued and the DTA Board of Trustees was tasked with either negotiating a new contract with Edison or

replacing Edison with another charter school manager. If the contract with Edison was renewed, Edison would still require that it be paid 20% of DTA's revenue as a management fee.

21. DTA and the Board of Trustees, that, at this time, included Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, and Marvin Donaldson, knew that DTA could not afford to pay Edison 20% of revenues before the Bonds were issued. Said Defendants knew that the Bonds were issued, in part, to pay off the large unmanageable $2.5 million debt to Edison and give DTA a chance to grow and achieve its mission without incurring new debts that it could not afford to repay.

22. DTA and the Board of Trustees that, at this time, included Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, and Marvin Donaldson, knew renewing the contract with Edison would cause DTA to again operate at a deficit in violation of the Charter and DESE requirements. Said Defendants knew operating at a deficit could cause UMKC to refuse to renew the DTA Charter and knew that non-renewal would cause DTA to be unable to repay the Bonds.

23. Said Defendants negligently renewed the contract with Edison and agreed to pay Edison 20% of DTA's revenues despite the fact that they knew or should have known this would force DTA to incur substantial new debt to Edison which DTA could not repay.

24. Between 2007 and 2010 the DTA Board of Trustees, including specifically Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, and Marvin Donaldson, knew or should have known DTA was incurring a substantial new debt to Edison because DTA still did not generate sufficient revenue to pay the 20% annual management fee to Edison.

25. DTA had the ability to terminate the management agreement with Edison and replace Edison with a charter school manager that would charge a lower management fee that

DTA could afford to pay without driving it further into debt that it could not repay.

26. The DTA Board of Trustees, including specifically Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, and Marvin Donaldson, negligently failed to terminate the contract with Edison before the debt to Edison became so large that it could not be repaid.

27. On September 10, 2010, the DTA charter sponsor, UMKC, sent a letter to the DTA Board of Trustees stating that DTA student test scores did not meet the state's minimum standards. UMKC requested a meeting with DTA principals and administrators to develop a remediation plan to assist DTA in improving student achievement. UMKC warned that a failure to develop an approved remediation plan would result in DTA being put on probation status for the 2010-2011 school year. UMKC stated:

> The governing board and administrative leadership at Derrick Thomas Academy must realize that this letter serves as a **second step** towards the closure of the school. The potential closure for DTA charter would be no later than the 2012-2013 school year if the required expectations are not met.

DTA and the Board of Trustees, including specifically Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, and Marvin Donaldson, knew or should have known this was the second warning from DESE that the DTA charter would not be renewed if the Board of Trustees failed to prepare an approved remediation plan.

28. Defendant Jacqueline Spencer joined the Board of Trustees in early 2010.

29. In the fall of 2010 DTA and the Board of Trustees, including the Board Defendants Stephan Wallace, Betty Brown, Pete Muenks and Jacqueline Spencer, belatedly decided DTA needed to separate from Edison. DTA and the Board, including said Defendants, correctly, but belatedly, determined Edison's fees were too high. At this point, DTA owed Edison about $1.7 million that it could not repay and stay solvent.

30. DTA and the Board of Trustees, including the Defendants Stephan Wallace, Betty Brown, Pete Muenks and Jacqueline Spencer, negligently concluded that DTA could self-manage and did not need to hire another charter school management company when it terminated Edison. Said Defendants knew or should have known DTA had never shown any ability to self-manage.

31. DTA and the Board of Trustees, including Defendants Stephan Wallace, Betty Brown, Pete Muenks and Jacqueline Spencer, calculated that DTA would save $134,000 per month if it separated from Edison and self-managed the school, but that the school's financial situation would still be "very tight."

32. On September 13, 2010 the Board, including Defendants Stephan Wallace, Betty Brown, Pete Muenks and Jacqueline Spencer, held a special meeting to discuss the status of its agreement with Edison. During the special board meeting, the Board members discussed the fact that if they separated from Edison to self-manage, a promissory note DTA previously signed in favor of Edison for the $1.7 million debt would immediately come due.

33. The Board consulted with legal counsel who recommended DTA arbitrate with Edison per an arbitration provision in the management agreement to come to an agreement on the amount due and payment terms that would not force DTA to default on the obligation to Edison.

34. Despite the above alleged warnings from UMKC and the need to reach an agreement with Edison with respect to the $1.7 million debt, the Board, including specifically Defendants Stephan Wallace, Betty Brown, Pete Muenks and Jacqueline Spencer, negligently voted to terminate the agreement with Edison without reaching an agreement with Edison

regarding the $1.7 million loan and without hiring a competent person or entity to replace Edison and assume management and operation of DTA.

35.    The DTA Board of Trustees, including Defendants Stephan Wallace, Betty Brown, Pete Muenks and Jacqueline Spencer, held a regular meeting on September 21, 2010 where the September 10, 2010 letter from UMKC was discussed.  The meeting minutes note only that "UMKC is pleased with the growth but expects to see more "and the principals are working hard to reach AYP [adequate yearly progress]."

36.    DTA held another Board Meeting on October 26, 2010 where Defendants Stephan Wallace, Betty Brown, Marvin Donaldson, Pete Muenks and Jacqueline Spencer discussed the remediation plan required by UMKC and stated the school principals Nehemiah Thomas and Shane Knight would need to make revisions to the plan by November 9, 2010.  The Board stated it would be ready to vote on the remediation plan by November 16, 2010 and noted the remediation plan was "a requirement of UMKC."

37.    During the November 16, 2010 Board Meeting, two directors of the UMKC Charter School Center, Gene Vinson and Steve McClure, presented a remediation plan.  The Board noted that DTA's charter was up for renewal in 2012 and DTA must "meet the requirements" and have a "School Operation Plan" in place.  The Board did not discuss this remediation plan.

38.    The Board did not discuss the requirement to develop what was now referred to as a "School Operation Plan" during the December 15, 2010 Board Meeting.

39.    On February 15, 2011, with only three Board Members present, Stephan Wallace, Betty Brown and Pete Muenks, the Board negligently voted to increase staff salaries despite

{00429304.DOCX; 1}
KCP-4345597-1 516179/1

having a "very tight" budget and despite the failure to reach an agreement with Edison with respect to the $1.7 million debt.

40.     During Board Meetings from February through June 2011, the DTA school principals, Nehemiah Thomas and Shane Knight, recommended the hiring of multiple additional staff, which the Board negligently approved.  The two principals were unaware of the school's financial problems and, had they known, would not have recommended the hiring of additional staff.  The Board, specifically including Defendants Stephan Wallace, Betty Brown, Pete Muenks and Jacqueline Spencer, was aware of DTA's insolvency and said Defendants' failure to inform the school principals of the school's insolvency before additional staff was hired was negligent and irrational.

41.     On May 17, 2011 the Board negligently and in conscious disregard of their duties as board members voted to omit the Edison the $1.7 million debt DTA owed Edison from its financial audit and negligently approved a salary increase of 1.5% for the faculty and staff of DTA.

42.     Defendant Michael McInerney joined the Board of Trustees in the summer of 2011.

43.     During the September 20, 2011 Board Meeting, Dr. Steven McClure, a Charter School Liaison from UMKC, advised the Board to be conservative and cautious about potential bills and stated he wanted the issue with the Edison indebtedness cleared up before the time for the charter renewal.  The Board noted that it needed to provide an "Improvement Plan" to DESE as well as one to UMKC.

44.     In October 2011, the Missouri Department of Elementary and Secondary Education ("DESE") notified the DTA school principal, Nehemiah Thomas, that DTA met the

criteria for a "financially distressed" school because the school had a negative fund balance of over $600,000. DTA was insolvent and financially distressed in large part due to the negligent renewal of the management agreement with Edison and the subsequent negligent failure of the Board of Trustees, including specifically, the Board Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, and Marvin Donaldson, to terminate Edison and hire another less expensive manager before the agreement with Edison rendered DTA insolvent and in jeopardy of losing its Charter.

45.     In October 2011, UMKC sent a letter to Betty Brown, the DTA Board President, regarding DTA's financially distressed status and requested that meetings be held in November and December 2011 to review DTA's debt repayment plan and discuss how DTA planned to achieve a positive 3% fund balance for the 2012-2013 school year, both of which were required per DTA's charter.

46.     In December 2011 DTA sent a letter to Edison discussing DTA's poor financial condition which, if further compromised by a large settlement with Edison, would result in UMKC revoking its charter.

47.     On January 10, 2012 the DTA elementary school principal, Shane Knight, sent an email to DTA administrators which stated "Edison never budgeted the statutory 3% surplus AND for many years we were unable to make the management fee as scheduled, which is why we were in debt to begin with." (Emphasis in original).

48.     In January 2012, the DTA accountant, Brad Steele, sent an email to Board Member Stephan Wallace and administrators noting the emphasis UMKC was putting on DTA's financial status and warning them not to spend any money that is not a necessity.

49.     Also in January 2012, elementary school principal, Shane Knight, sent an email to Defendants Stephan Wallace and Betty Brown stating that he and Nehemiah Thomas, the DTA middle school principal, had been "operating under the understanding that from a cash flow basis DTA was in decent standing." Knight further noted:

> [H]ad [principal Nehemiah Thomas] and I been aware of this situation we would have made significantly different staffing decisions late last summer and through the fall. As it stands right now, we can make some cost-cutting measures, but I have serious concerns whether even those will be sufficient to 'right the boat'.

50.     DTA and the Board Members Betty Brown, Stephan Wallace, Pete Muenks, Jacqueline Spencer, Marvin Donaldson and Michael McInerney made negligent and irrational business decisions when they chose not to inform DTA administration about DTA's poor financial status and accepted the administrators' recommendations with respect to staff hiring and expenditures.

51.     On January 24, 2012, DESE notified Shane Knight that due to fiscal compliance concerns, DESE was placing DTA on a cash management plan, the purpose of which was to assist DTA in handling its finances to "help your district avoid situations that could have potentially catastrophic financial consequences."

52.     On January 26, 2012, Defendant Stephan Wallace emailed Defendant Betty Brown and administrators regarding a counteroffer to a settlement proposal from Edison, noting UMKC informed DTA's Board at a previous meeting that: DTA must have a budget in place by June 30, 2012 that included a plan to repay Edison; DTA is required to have a 3% fund balance; revocation of the DTA's charter would result in closure of DTA; and revocation of the Charter would be an event of default under the Bond covenants which would result in all assets of the DTA going to the Bond holders.

53.     DTA reached a confidential settlement agreement with Edison sometime after January 2012 that required DTA to make monthly payments to reduce the debt.  During the March 20, 2012 Board Meeting the Board, including Defendants Betty Brown, Michael McInerney, Jacqueline Spencer and Marvin Donaldson,  stated  it had no clue how DTA was going to make up millions of dollars in four months.

54.     DTA and the Board Member Defendants negligently continued to not provide UMKC with any meaningful plan to resolve its financial issues and negligently failed to timely report to UMKC as demanded by UMKC.

55.     On April 2, 2012 UMKC sent a letter to DTA ("the UMKC Letter") officially notifying the Board and administrators that UMKC, as the charter school sponsor, "had not received any official notification of action taken by the governing Board of Trustees regarding the financial issues that were addressed by the sponsor at the December 20, 2011 school board meeting."

56.     The UMKC Letter noted DTA had a fund deficit of $646,495.13 and had failed to comply with multiple provisions of the Missouri Charter School laws.  UMKC noted that it tried to work with DTA officials and the past governing board president so the students, parents, staff members and community were not penalized for the Board Members actions.

57.     The UMKC Letter listed issues which had not been addressed by DTA in writing as of the date of the UMKC Letter:

1. Deficit fund balance in the amount of $646,495.13
2. Repayment plan for incurred debt with Edison
3. Minimum of 3.0% fund balance each year starting in 2011-2012

The UMKC Letter noted that "[s]ince school officials have failed to meet two required timelines thus far, it is the expectation that the UMKC sponsor officials would receive no later than May 1,

2012, a feasible draft budget and educational plan that clearly demonstrates that incurred debt can be paid off without impacting the quality of teaching and learning at DTA…"   UMKC  gave the Defendant Board Members notice that the final budget and educational plan must be sent to UMKC no later than June 1, 2012.

58.     On April 25, 2012 the DTA accountant, Brad Steele, emailed elementary school principal Shane Knight, middle school principal, Nehemiah Thomas, and Defendant Betty Brown regarding a number of issues with the DTA Draft Budget, such as over-calculations of transportation revenues, total expenses that did not tie to expense totals, and holding "non-personnel" expenses constant despite an increase of students.  Steele reminded Knight, Thomas and Defendant Brown that they needed to "get all things ironed out…before UMKC comes back."

59.     During the May 8, 2012 Board meeting, Defendants Betty Brown, Michael McInerney, Jacqueline Spencer and Marvin Donaldson, voted to terminate the DTA Director of Operations and Finance, James Greenlaw.  The Board noted that there were significant staff resignations prior to the 2012-2013 school year but did not discuss the problems with its Draft Budget or the UMKC reporting requirements.

60.     DTA and the Board Members acted negligently and made irrational business decisions when they prepared inadequate budgets, failed to provide timely, complete and accurate information to UMKC and failed to comply with DESE's cash management plan.

61.     On July 13, 2012 the Board of Trustees, including the Defendants Betty Brown, Michael McInerney, and Jacqueline Spencer, sent a misleading letter to DTA parents informing them that school will be open for the 2012-2013 school year, DTA was in "good financial

standing", and "DTA currently meets the reserve requirements as mandated by the Missouri Department of Education and Secondary Education and DTA's charter sponsor, the UMKC."

      62.    On July 20, 2012, Director of the UMKC Charter School Center, Dr. Jerry Cooper, emailed a DESE representative stating:

> We have encouraged Betty Brown, governing board president to employ a CEO so this individual can handle the organizational management issues (central office issue) for the charter school since this is a major weakness of the charter school. Currently, the board president is trying to assume many of these roles and responsibilities but we have said this must change if the charter school is to be renewed. This school has a long history of the past board president assuming a one person leadership position which has led to many of the financial problems and school problems.

Betty Brown and the rest of the Defendant Board members negligently ignored Cooper's recommendations and never hired a CEO to replace Edison and handle organizational and management issues.

      63.    On August 31, 2012 DTA staff member, Patty Schumacher, emailed Defendant Stephan Wallace and the DTA Finance and Operation Director, Dianna Washington, regarding the negative fund balance and the need to get the budget updated by September 24, 2012, adding "you can bet DESE is sharing this information with UMKC."  Although DTA and the Defendant Board Members knew that both DESE and UMKC were monitoring their actions and expected DTA and the Board to come up with an acceptable financial and educational plan, Defendant DTA and the Defendant Board Members negligently failed to take any meaningful action to resolve these issues that they knew or should have known were about to result in the non-renewal of the DTA Charter.

      64.    As of November 2012, Defendant DTA and the Defendant Board Members, negligently and with no rational basis, had failed to provide UMKC the information it demanded.

On November 20, 2012, UMKC notified DTA and the Board of Trustees that UMKC would not renew DTA's charter.

65.     Each of the above-alleged negligent decisions was an irrational act and constitutes and act or a course of conduct which demonstrates a conscious indifference to the professional duties of board members and a willful and wanton abrogation of professional responsibilities.

66.     As a direct and proximate result of the negligence of DTA and the Defendant Board Members, the Bonds will not be repaid and the Trustee, acting on behalf of Bond holders have incurred and will continue to incur damages in an amount that is presently unknown but is believed to exceed $10,000,000.

67.     Based on knowledge, information and belief, the Defendants have liability insurance that provides coverage for the negligent conduct alleged in this Complaint.

### CLAIM FOR RELIEF
**(Negligence)**

68.     Plaintiff repeats the allegations of all preceding paragraphs of this Complaint and incorporates the same by reference.

69.     DTA and each of the Defendant Board Members owed a duty to the Trustee acting on behalf of the bondholders to not act negligently, to not make irrational business decisions, to not engage in a course of conduct demonstrating a conscious indifference to the professional duties of board members, and to not willfully and wantonly abrogate their professional responsibilities.

70.     DTA and the Defendant Board Members negligently failed to perform their duties, made the above alleged irrational business decisions, engaged in a course of conduct that demonstrated a conscious indifference to the professional duties of board members and willfully and wantonly abrogated their professional responsibilities.

71.     As a direct and proximate result of said negligent conduct, irrational business decisions and course of conduct, the Plaintiff, acting in its capacity as Trustee on behalf of holders of the Bonds has suffered damages.

WHEREFORE, Plaintiff requests that the Court enter judgment in its favor and against Defendants for damages in such sum as will adequately compensate for Plaintiff's actual damages sustained, for costs incurred herein, for interest as allowed by law, and for such other and further legal and equitable relief as the Court deems proper.

## JURY DEMAND

Plaintiff hereby requests a jury trial.


DATED this 31st day of July 2013.


Respectfully submitted,

HUSCH BLACKWELL, L.L.P.


*/s/Benjamin F. Mann_____*
Benjamin F. Mann, #26892
Christopher Miles, #63654
4801 Main Street, Suite 1000
Kansas City, MO 64112
Telephone: 816-983-8000
Facsimile: 816-983-8080
*benjamin.mann@huschblackwell.com*
*christopher.miles@huschblackwell.com*

-and-

DAVIS & CERIANI, P.C.

*/s/Michael P. Cillo*_____
Michael P. Cillo *Pro Hac Vice Pending*
Valeri S. Pappas *Pro Hac Vice Pending*
Melissa J. Hessler  *Pro Hac Vice Pending*
1350 Seventeenth Place, Suite 400
Denver, CO 80202
Telephone: 303-534-900
Facsimile:  303-534-4618
*mcillo@davisandceriani.com*
*vpappas@davisandceriani.com*
*mhessler@davisandceriani.com*