IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 13-00767-CV-W-GAF |
| DERRICK THOMAS ACADEMY CHARTER SCHOOL, INC., et al., | ) |
| Defendants. | ) |

## ORDER

Presently before the Court is Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, Marvin Donaldson, Jacqueline Spencer, and Michael McInerney's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (Doc. # 10). Plaintiff Wells Fargo Bank, N.A. ("Plaintiff") opposes.[2] (Doc. # 12). For the reasons set forth below, Defendants' Motion is GRANTED.

## DISCUSSION

**I.  FACTS**

Derrick Thomas was a former Kansas City Chiefs Linebacker who established the Third and Long Foundation in 1990 to address illiteracy issues with urban children. (Complaint ¶ 7). EdisonLearning, Inc. ("Edison") is a for-profit business engaged in the operation and management of charter schools. (*Id*. ¶ 8). Edison partnered with the Third and Long Foundation

---

[1] Defendants Janice Cade, Betty Brown, Stephan Wallace, Pete Muenks, Marvin Donaldson, Jacqueline Spencer, and Michael McInerney are collectively referred to as "Defendants." Defendants are named solely in their official capacity. (*See* Complaint).

[2] Plaintiff sues "in its capacity as Successor Trustee." (*See* Complaint).

to open Defendant Derrick Thomas Academy Charter School, Inc. ("DTA"). (*Id*.). DTA was a nonprofit corporation. (*Id*. ¶ 2). Defendants were members of the DTA Board of Trustees. (*Id*. ¶ 3). DTA opened in 2002. (*Id*. ¶ 8).

According to Plaintiff, the Missouri Chartered Schools Act, Mo. Rev. Stat. § 160.400 *et seq*. (the "MCSA"), required DTA to have a charter sponsor and management company. (*Id*. ¶¶ 9-10). DTA's charter sponsor was the University of Missouri-Kansas City ("UMKC"), and DTA's management company was Edison. (*Id*.). Plaintiff alleges that UMKC, as a charter sponsor, had the ability to revoke or refuse to renew DTA's charter if DTA failed to comply with the MCSA or the requirements imposed by the Missouri Department of Education and Secondary Education ("DESE"). (*Id*. ¶ 10).

Plaintiff alleges that management companies, like Edison, typically charged rates between 5% and 20% of a charter school's revenues. (*Id*. ¶ 11). Per the contract between DTA and Edison, Plaintiff claims DTA was required to pay Edison 20% of DTA's revenues. (*Id*.). However, Plaintiff alleges DTA could not pay Edison. (*Id*.). By 2007, Plaintiff claims DTA was indebted $8.2 million for building-, equipment-, and construction-related expenses and owed $2.5 million to Edison. (*Id*. ¶ 12). Due to this indebtedness, Plaintiff states the Industrial Development Authority of Kansas City (the "Authority") issued over $10 million in Revenue Bonds (the "Bonds") to assist DTA in refinancing its debt pursuant to a Loan Agreement between DTA and the Authority. (*Id*. ¶ 13). Under the Loan Agreement, Plaintiff claims the Bonds were secured by DTA's future revenues and all funds and investments held by DTA. (*Id*. ¶ 15). According to Plaintiff, DTA's main source of revenue was state aid from DESE. (*Id*.).

UMB Bank, N.A., Corporate Trust ("UMB Bank") was the original Indenture Trustee for the Bonds and administered the distribution of Bond proceeds and the payment of principal and

interest on the Bonds to the Bondholders. (*Id.* ¶ 16). Presently, pursuant to an Instrument of Successor Trustee Appointment and Acceptance, Plaintiff serves as Successor Indenture Trustee. (*Id.*).

Plaintiff claims DTA and Defendants were negligent in the management and operation of DTA. (*Id.* ¶¶ 68-71). According to Plaintiff, DTA and Defendants owed a duty to "to comply with the provisions of the Loan Agreement and make all reasonable efforts to repay the Bonds." (*Id.* ¶ 17). Plaintiff also alleges DTA and Defendants owed a duty "to not act negligently, to not make irrational business decisions, to not engage in a course of conduct demonstrating a conscious indifference to the professional duties of board members, and to not willfully and wantonly abrogate their professional responsibilities." (*Id.* ¶ 69).

Plaintiff claims DTA and Defendants breached these duties in several ways, including "repeatedly and negligently incur[ing] debt to Edison [that DTA and Defendants] knew DTA could not repay, fail[ing] to comply with charter school standards imposed by the MCSA, and fail[ing] to comply with demand for information from DESE and UMKC." (*Id.* ¶¶ 18, 70). For instance, Plaintiff alleges Defendants negligently agreed to renew a contract with Edison, further incurring debt that Plaintiff claims Defendants knew DTA could not repay. (*Id.* ¶¶ 20-26, 29-34, 53). Additionally, Plaintiff asserts Defendants agreed to make imprudent salary and staffing increases with the knowledge that DTA was in financial distress. (*Id.* ¶¶ 39-50).

Because of these and other alleged breaches of duty, Plaintiff asserts that on November 20, 2012, UMKC refused to renew DTA's charter, causing DTA to close. (*Id.* ¶¶ 18, 64). As a result, Plaintiff claims DTA no longer received state aid payments from DESE. (*Id.* ¶ 19). Without state aid payments as revenue for DTA, Plaintiff asserts DTA could not pay its obligations under the Loan Agreement. (*Id.*). As such, Plaintiff claims DTA went into default

3

and the Bondholders were not fully repaid. (*Id*. ¶¶ 19, 66). Plaintiff claims it was DTA and Defendants' negligence that caused Plaintiff to incur, and continue to incur, damages. (*Id*. ¶¶ 66, 71). Finally, Plaintiff claims DTA had liability insurance that covered the claims contained within Plaintiff's Complaint. (*Id*. ¶ 67).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion to dismiss, a court treats all well-pleaded facts as true and grants the non-moving party all reasonable inferences from the facts. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (citation omitted). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation" and such "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A Rule 12(b)(6) motion should be granted only if the non-moving party fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the party to the relief requested. *Twombly*, 550 U.S. at 570; *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999).

## III. ANALYSIS

Defendants argue there are three (3) bases for dismissing Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6): (1) Defendants and DTA are entitled to sovereign immunity; (2) Defendants are entitled to official immunity; and (3) Plaintiff fails to allege a recognized duty under Missouri law. (Doc. # 11, p. 6).

State law governs when federal jurisdiction is based on diversity of citizenship. *See Adams v. Fuqua Indus., Inc.*, 820 F.2d 271, 273 (8th Cir. 1987) (citations omitted) ("Missouri law governs the substantive issues of liability . . . ."). The parties agree Missouri law applies. (*See generally* Docs. ## 11, 12). Accordingly, the Court will apply Missouri law to determine whether Defendants are entitled to sovereign or official immunity and whether Plaintiff sufficiently alleged a duty to establish a negligence claim. Whether a charter school and its board members are entitled to sovereign immunity is a case of first impression in Missouri. However, there will be no need to decide such an unprecedented issue if Plaintiff fails to allege a duty under Missouri law. Accordingly, the Court will first address whether Plaintiff sufficiently alleges a duty under Missouri law.

**A.     Whether Plaintiff Sufficiently Alleged a Duty under Missouri Law to State a Claim for Negligence**

To state a claim for negligence under Missouri law, a plaintiff must plead (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the duty, and (3) the plaintiff suffered an injury proximately caused by the defendant's breach. *Pippin v. Hill-Rom Co., Inc.*, 615 F.3d 886, 889 (8th Cir. 2010) (citing *Lopez v. Three Rivers Elec. Coop., Inc.*, 26 S.W.3d 151, 155 (Mo. 2000)). Defendants argue Plaintiff fails to state a negligence claim because Plaintiff fails to allege a duty under Missouri law. (Doc. # 11, p. 12). "'Whether a duty exists is purely a question of law.'" *Pippin*, 615 F.3d at 889 (quoting *Lopez*, 26 S.W.3d at 155).

Plaintiff filed its Complaint in its capacity as Successor Indenture Trustee on behalf of the Bondholders. (Complaint ¶¶ 16-17). According to Plaintiff, Defendants "owed a duty to [Plaintiff] acting on behalf of the [Bondholders], to comply with the provisions of the Loan Agreement and make all reasonable efforts to repay the Bonds." (*Id*. ¶ 17). Additionally, Plaintiff claims Defendants owed a duty to refrain from acting irresponsibly or irrationally in

making financial decisions. (*Id*. ¶ 69). Plaintiff asserts Defendants breached that duty when Defendants engaged in fiscally irresponsible and irrational conduct, causing DTA to be in default on its Bond repayments. (*Id*. ¶¶ 18, 70). As a consequence of this default, the Bondholders have been injured because they have not been paid what was due under their Bonds. (*Id*. ¶¶ 19, 71).

As to Defendants' alleged duty to comply with the Loan Agreement and make Bond repayments, such an alleged breach arises from the contractual relationship between the parties and Plaintiff's claim amounts to only damages for economic loss. "In Missouri, the economic loss doctrine has been observed to prohibit a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). But for DTA and Defendants' alleged default on Bond repayments pursuant to the Loan Agreement, Plaintiff would not have a claim for over $10 million in damages due to the Bondholders not receiving Bond repayments. Thus, the essence of Plaintiff's claim is contractual in nature, stemming from a contractual obligation allegedly breached by Defendants. As such, Missouri law prohibits Plaintiff from seeking to recover in tort for pure economic damages. Accordingly, Plaintiff fails to state a claim for negligence.

As to Plaintiff's claim that Defendants had a duty to act fiscally responsible, the Court did not find, and Plaintiff failed to point to, a duty under Missouri law where a corporation's board members have a duty to a creditor or other third party to act fiscally responsible. *See Premier Bank v. Tierney*, 114 F. Supp. 2d 877, 886-87 (W.D. Mo. 2000) (finding no Missouri case law, in a trustee's suit on behalf of bondholders against a corporation's board members, demonstrating there was a duty owed by corporate agents to the corporation's creditors or other

third parties (citing *Darling & Co. v. Fry*, 24 S.W.2d 722, 723 (Mo. Ct. App. 1930); *Union Nat'l Bank of Kan. City v. Hill*, 49 S.W. 1012, 1017 (Mo. 1899))).

Further, the Missouri Supreme Court dealt squarely with this issue over 100 years ago in a decision that has not been abrogated or overruled. In *Union National Bank*, a corporation became insolvent due to alleged neglect and mismanagement by the corporation's directors. *Union Nat'l Bank*, 49 S.W. at 1012. In a suit against the corporation's directors, the Missouri Supreme Court questioned whether the plaintiff, a creditor of the corporation, could maintain a negligence action due to the directors' failure to exercise care in managing the affairs of the corporation. *Id*. at 1014. The Missouri Supreme Court did not hesitate to find that the *corporation* would have a negligence action against its own directors for alleged mismanagement of the corporation. *Id*. at 1015-16. However, the court declined to find a duty owed by a corporation's directors to the corporation's creditors. *Id*. at 1016. The court stated:

> The relation of the creditors towards the corporation 'is that of contract, and not of trust.' . . . That directors are liable in an action at law to their principal, the corporation, for losses resulting to [the corporation] from [the directors'] malfeasance, misfeasance, or their failure or neglect to discharge the duties imposed by their office . . . is clear . . . . But it is otherwise as to creditors. The directors of a going corporation, whether able to pay its debts or not, owe no allegiance to them.

*Id*. (quoting *Briggs v. Spaulding*, 141 U.S. 132 (1891)). The court held that the relationship between the corporation and the plaintiff is that of a debtor and creditor and that the directors "cannot be held responsible at the suit of its general creditors" "for the mere failure of the [corporation's] directors to exercise ordinary diligence and care as such, in the management of the business affairs of the [corporation], by reason of which the [corporation] became insolvent." *Id*. at 1017.

That principal applies here.  Plaintiff serves as the Successor Indenture Trustee on behalf of the Bondholders, who are creditors of DTA because DTA owed Bond repayments to them.  It may be the case under Missouri law that Defendants could be liable to DTA for fiscally irresponsible decisions made that resulted in DTA closing and being unable to make Bond repayments.  However, Defendants owed no duty or allegiance to the Bondholders. or Plaintiff acting as Successor Indenture Trustee of the Bondholders.  Accordingly, without any such recognized duty, Plaintiff fails to state a claim for negligence under Missouri law.

**B.      Whether Defendants are Entitled to Sovereign or Official Immunity**

Because the Court concludes Plaintiff fails to state a negligence claim under Missouri law against Defendants, the Court declines to opine on the sovereign immunity issue.  Further, deciding whether DTA or Defendants were entitled to sovereign immunity at this stage would have been futile.

Under Missouri Revised Statute § 537.600, with certain statutory exceptions, public entities are entitled to sovereign immunity from state tort actions.  *See also Hammer v. City of Osage Beach, Mo.*, 318 F.3d 832, 842 (8th Cir. 2003) (citing Mo. Rev. Stat. § 537.600).  One (1) exception to sovereign immunity is when the public entity procures insurance for tort claims. Mo. Rev. Stat. § 537.610.

The primary issue for sovereign immunity purposes in this case is whether DTA was a public entity.  *See State ex rel. Bd. of Trs. v. Russell*, 843 S.W.2d 353, 358 (Mo. 1992) (stating a court must first determine if the entity is a "public entity").  If DTA was a public entity, Defendants would also be immune from tort actions because sovereign immunity "'bars suits against employees in their official capacity.'"  *B.A.B., Jr. v. Bd. of Educ.*, 698 F.3d 1037, 1041 (8th Cir. 2012) (quoting *Betts-Lucas v. Hartmann*, 87 S.W.3d 310, 327 (Mo. Ct. App. 2002)).

However, even if the Court concluded DTA was a public entity and DTA and Defendants are entitled to sovereign immunity, Plaintiff has sufficiently pleaded that Defendants and DTA are excepted from sovereign immunity because Plaintiff alleged DTA obtained liability insurance extending coverage over tort actions. Thus, Plaintiff's claim would have survived Defendants' Motion. On the other hand, Plaintiff's claim would have survived Defendants' Motion if the Court concluded DTA was not a public entity because non-public entities are not extended sovereign immunity in Missouri. *See* Mo. Rev. Stat. § 537.600. Thus, even if Plaintiff had sufficiently stated a claim for relief, deciding whether DTA and Defendants are entitled to sovereign immunity would have been futile at this stage in the proceedings.

In addition, Defendants' argument that they are entitled to official immunity fails. Official immunity only applies in instances when public officials are sued in their individual capacities. *Betts-Lucas*, 87 S.W.3d at 327. While it is unclear whether Defendants can be classified as "public officials," Plaintiff only sues Defendants in their official capacities. (*See* Complaint). Thus, even if it could be said that Defendants were public officials, official immunity is inapplicable because they are not sued individually. Accordingly, Defendants' official immunity argument fails as a matter of law.

## **CONCLUSION**

Plaintiff alleges Defendants are liable to the Bondholders because Defendants failed to comply with the Loan Agreement and acted negligently when they made fiscally irresponsible or irrational decisions in the management of DTA. Plaintiff's claim that Defendants failed to comply with the Loan Agreement and make Bond repayments under the Loan Agreement is a contractual claim seeking only economic losses. As such, Missouri law prohibits Plaintiff's tort

claim under the pure economic loss doctrine. Therefore, Plaintiff fails to state a negligence claim.

Further, Plaintiff's claim that Defendants had a duty to the Bondholders to act fiscally responsible fails. Under Missouri law, Defendants owed no duty to act fiscally responsible to the Bondholders because the Bondholders were nothing more than DTA's creditors. Thus, Plaintiff's claim fails to state a claim for negligence on the Bondholders' behalf. Accordingly, for these reasons and the reasons set forth above, Defendants' Motion is GRANTED. Plaintiff's claims against Defendants are DISMISSED.[3]

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED: March 4, 2014.

---

[3] The Court notes this Order only applies to Defendants. While DTA is represented by the same attorneys as Defendants, the present Motion was not filed on DTA's behalf. (*See* Doc. # 10). Thus, DTA remains a party to the action.

Additionally, Defendants requests the Court stay litigation if the Court does not dismiss Plaintiff's claim against Defendants. (*Id.*). Because the Court grants Defendants the relief requested, the Court declines to consider Defendants' request to stay.